UNITED STATES of America, Plaintiff,

v.

John GOTTI, et al., Defendants.

In the Matter of the Application
of Frank LOCASCIO For a
Writ of Habeas Corpus.

Nos. CR–90–1051, CV–91–3999.

United States District Court,
E.D. New York.

Oct. 23, 1991.

John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

David Greenfield, New York City, John W. Mitchell, LaRossa, Mitchell & Ross, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The defendant Locascio once again petitions this court for reconsideration of its order detaining him based upon a finding that the government has established by clear and convincing evidence that the defendant is a danger to the community and that there are no conditions or combination of conditions that would protect the community against the threat he poses to them. That finding was made after a full hearing at which the court heard extensive argument and evidence consisting to a very large extent of conversations electronically intercepted pursuant to a valid court order which convinced the court on December 21, 1990 that an order of detention was compelled. That order was one which the defendant could have appealed but elected not to. *See* 18 U.S.C. § 3145(c).

In a letter dated March 14, 1991, counsel for Locascio requested that the court reconsider its order of detention. A critical reading of that five-page request readily revealed that it was based upon the following assertions: (1) that the indictment and the evidence did not support the court's detention determination; (2) the voluminous surveillance tapes the government made available to the defendants make it difficult for Locascio to assist his counsel in preparing his defense; (3) Locascio does not have a criminal history which bespeaks violence and has personal problems which, essentially, derive from his separation from his aged mother; and (4) the duration of his detention.

Those assertions did not call to the court's attention any fact or any consequence of his detention not known before. If, as he claimed to believe, the evidence elicited at the detention hearing did not justify an order of detention, then an appeal from that order was the remedy to pursue. The court was and is obviously aware that detention of a defendant inhibits free and ready access to his counsel and the court was aware of Locascio's criminal history and his relationship with his mother. In an order dated June 14, 1991, I wrote that I carefully considered the affirmation of defendant's counsel in support of his motion for reconsideration and his oral argument supplementing his written presentation, as well as the written and oral response of the government. I denied the motion to reconsider for the reason that my attention had not been called to any matter which I had overlooked and would require modification of my order.

In making my determination, I also referred to Rule 3(j) of the Rules of the United States District Courts for the Southern and Eastern Districts of New York. That Rule provides, in substance, that a motion for reargument shall set forth matters which the court has overlooked. In doing so, I was careful to note that Rule 3(j) was to be found in the Civil Rules Section of those Rules and had no analogue in the section on Criminal Rules. I also observed that the standard of Rule 3(j) was

a "prudent one clearly designed to avoid the repetitive hearing of the same presentation in lieu of seeking Appellate review." This motion and the petition for a writ of habeas corpus which has also been filed confirm the salutary purpose Rule 3(j) was designed to serve and the propriety of applying that standard in the context of a criminal case.

The defendant's counsel, in his sworn affirmation in support of this motion, writes, at paragraph 14:

In the Memorandum and Order of June 14, 1991, the Court did not explain why it made reference to 18 U.S.C. § 3145(b). Nothing contained in defense counsel's letter or the Notice of Motion filed on behalf of Mr. Locascio made reference to that section. Moreover, 18 U.S.C. § 3142(c)(3) specifically provides that a detained person has the right to petition the court of original jurisdiction, at any relevant time, for an order amending or changing an order of detention. Indeed the Court may even move, *sua sponte*, to amend or revoke a prior order of pretrial detention (see ¶ ___, infra).

I am not aware of any principle which precludes or even inhibits me from making reference to a statute, decision or rule which I regard as relevant, indeed controlling, because neither was cited in the defendant's submission. Section § 3145(b), when read together with § 3145(c), should make readily apparent the relevance of the reference to those sections in my prior order. Section 3145(b) governs the review of a detention order issued by a magistrate or by a person other than a judge of a court having original jurisdiction over the offense. The person detained may seek review of that order with the court having original jurisdiction over the offense. That motion for review shall be determined promptly. As the defendant certainly knows, the order detaining Locascio was not issued by a magistrate or by some person not having original jurisdiction over the offense. The order of detention was issued by this court, which has original jurisdiction over the offenses with which Locascio was charged. That being so, the relevant statute is 18 U.S.C. § 3145(c),

which provides that an appeal from a detention order, or from a decision denying revocation or amendment of such order, is governed by 28 U.S.C. § 1291 and 18 U.S.C. § 3731. Both sections clearly provide for appeals to the United States Court of Appeals. In my Memorandum and Order dated June 14, 1991 I concluded by stating that "[t]he remedy available to the person detained ... is found in § 3145(c), namely, an appeal in accordance with 28 U.S.C. § 1291." The defendant has elected not to appeal either the order of detention entered on December 21, 1990, or the order entered on June 14, 1991 denying his motion to reconsider. He has, instead, filed repeated motions seeking the same relief based upon facts and circumstances which have not changed (with one exception to be addressed), since the original order of December 21, 1990.

■ The defendant asserts that 18 U.S.C. § 3142(c)(3) "specifically provides that a *detained* person has the right to petition the court of original jurisdiction, at any relevant time, for an order amending or changing an order of detention." (Greenfield Aff. ¶ 14) (emphasis added). The defendant's reliance upon § 3142(c)(3) is misplaced. That subdivision provides: "The judicial officer may at any time amend the order to impose additional or different conditions of *release*." (Emphasis added). Even the most casual reading of § 3142 will leave little doubt that subdivision (c)(3) has no application to conditions of detention. Only in subdivision (d) of § 3142 does the statute makes explicit provision for detention; it is also interesting to note that there is no provision in § 3142 which provides that a "judicial official may at any time amend an order to impose additional or different conditions of detention." The reliance by the defendant upon S.Rep. No. 98–225, 98th Cong., 2d Sess. 1, 16, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3199–3200 (Greenfield Aff. ¶ 29, pp. 13–14) is a commentary on § 3142(c)(3) pertaining to conditions of release.

■ It may be argued that 18 U.S.C. § 3142(f) contemplates the propriety of this motion, when, in providing for the detention hearing, it concludes:

The hearing may be reopened before or after a determination by the judicial officer, at any time before trial, if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

The requirement of "promptness" explicitly qualifying § 3145(b) was not imposed on § 3142(f). More noteworthy, however, is the holding of the court in *United States v. Hare*, 873 F.2d 796, 799 (5th Cir.1989), that the length of current or potential future detention cannot be considered under § 3142(f) "since it is not material to the risk of flight or dangerousness."

■ A substantial portion of the defendant's memorandum (and the affidavit of his counsel in support of this motion) is devoted to the time elapsed between the filing of this motion and the court's disposition of it. The defendant urges explicitly or implicitly that that lapse of time compels his release from detention. He relies for that contention upon 18 U.S.C. § 3145(b) and three cases, namely, *United States v. Gonzales*, 852 F.2d 1214 (9th Cir.1988); *United States v. Fernandez–Alfonso*, 813 F.2d 1571 (9th Cir.1987) and *United States v. Jacob*, 767 F.2d 505 (8th Cir.1985).

As has already been demonstrated, § 3145(b) has no application to the order of detention entered by this court. The defendant's claim to assistance from the cases cited fares no better. *Gonzales* was detained following a finding by a *magistrate* that he was a danger to the community and a flight risk. He appealed that order to the district court and contended that the court's failure to act on his motion for thirty-six days violated his right to have his motion determined promptly and that conditional release was the appropriate remedy for that violation, citing *United States v. Fernandez–Alfonso, supra.*

It must be noted, at the outset, that *Gonzales* concerns § 3145(b) and for the reasons that have already been given is not applicable here. It is also interesting to note, that even if § 3145(b) were applicable, the denial of the defendant's motion would also be required. The court in *Gonzales* wrote as follows:

Section 3145(b) does not define "promptly" nor does it provide a sanction or remedy for failure to provide timely review.... In *Fernandez–Alfonso* we determined that conditional release would be an appropriate remedy for a violation of the promptness requirement. In *Fernandez–Alfonso*, however, we were not faced with a finding by the district court and two magistrates that release of the defendant would pose a danger to the community. The district court in *Fernandez–Alfonso* determined that the accused posed a risk of flight. *Id.* Thus, contrary to Gonzales' claim in his brief in this matter, we did not hold in *Fernandez–Alfonso* that conditional release of a defendant is an appropriate remedy "notwithstanding the finding[ ] of danger." We believe it would be contrary to Congressional intent and the interests of society to release an individual who poses a danger to the safety of the community. Release of a person who may not appear for trial means that he may go unpunished for *past* behavior. This result penalizes the district court for its misdeed without placing society at risk. Release of a person who is a danger to the community, however, may result in the commission of future crimes against innocent persons. We decline to extend *Fernandez–Alfonso* to a case involving a finding of danger to the community.

852 F.2d at 1214–15.

This interpretation of *Fernandez–Alfonso* by the same court more than a year later makes any further discussion of *Fernandez–Alfonso* superfluous. I would simply add that *Fernandez–Alfonso* similarly concerns § 3145(b) and is, in any event, inapplicable. *See also United*

*States v. Barker,* 876 F.2d 475, 477 (5th Cir.1989). *United States v. Jacob* is inapposite.

Conspicuously absent from the defendant's discussion of the remedy to which he believes he is entitled because of the time elapsed between the filing of his motion and its disposition is a reference to *United States v. Montalvo–Murillo,* 495 U.S. 711, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990). The question before the Court was whether a failure to comply with the prompt hearing provision of the Bail Reform Act requires the release of a person who is a flight risk or a danger to the community. The Court decided that "[n]either the timing requirements nor any other part of the Act can be read to require, or even suggest, that a timing error must result in release of a person who should otherwise be detained." For the reasons advanced, the defendant's request for relief from the order of detention, insofar as it is based upon the time elapsed between the filing of his motion and this court's determination of it, is denied.

■ In his motion and petition the defendant contends that the combination of conditions he proposes for his release are sufficient to assure the safety of any other person and the community and should be accepted by the court. He also contends that his constitutional right to due process is violated by the length of his detention which, at the time argument was heard on the motion and the writ, was precisely ten months.

A consideration of the length of detention issue will begin with *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), although courts have wrestled with that issue before. Salerno was ordered detained pursuant to 18 U.S.C. § 3142(e) on the ground that no condition of release would assure the safety of the community or any person. The United States Court of Appeals for the Second Circuit reversed on the ground that to the extent that the statute authorized pretrial detention because the defendant is likely to commit future crimes, it was facially unconstitutional. The Supreme Court reversed. In doing so it held that the pretrial detention authorized by the statute was regulatory and not penal. The statute was a manifestation of Congressional desire to authorize courts to make bail decisions that gave "appropriate recognition to the danger a person may pose to others if released." S.Rep. No. 98–225, at 3, 1984 U.S.Code Cong. & Admin.News 3185. Congress perceived pretrial detention as a potential solution to a pressing social problem. The Court continued:

> We have repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest.
>
> *       *       *       *       *       *
>
> While the Government's general interest in preventing crime is compelling, even this interest is heightened when the Government musters convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents a demonstrable danger to the community. Under these narrow circumstances society's interest in crime prevention is at its greatest.
>
> On the other side of the scale, of course, is the individual's strong interest in liberty. We do not minimize the importance and fundamental nature of this right. *But ... this right may, in circumstances where the Government's interest is sufficiently weighty, be subordinated to the greater needs of society.... When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat.*

481 U.S. at 748–51, 107 S.Ct. at 2102–03 (emphasis added).

The evidence considered at the detention hearing clearly and convincingly established that Frank Locascio is the underboss of an organized crime "family" (*see, e.g.,* intercepted conversations between John Gotti and Frank Locascio on December 12,

1989, January 4, 1990, and January 17, 1990); that members of the "family" conspired to commit and caused the commission of murders; that Locascio and Gravano were to continue the "family" affairs in the event Gotti was detained; that witnesses had been tampered with in other cases involving high ranking members of this "family." These and other relevant facts set out in the Government's Memorandum in Support of its Motion for Pretrial Detention, which the government proved by clear and convincing evidence presented "an identified and articulable threat" to the community, justified the court in disabling Locascio from executing that threat without offending the Due Process Clause. Given the evidence presented, Locascio's liberty interest was justifiably subordinated to the greater needs of society.

Footnote 4 in the *Salerno* opinion frames one issue in this proceeding. It reads as follows:

We intimate no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive in relation to Congress' regulatory goal.

At least three cases in this Circuit have declined to fix the precise point at which detention has become punitive because excessively prolonged. In *United States v. Colombo*, 777 F.2d 96 (2d Cir.1985), the defendant was detained by the magistrate pretrial on the ground of dangerousness and was subsequently released by the district court for the reason, among others, that he would be detained from thirteen months to two years before his trial would be completed. The Court of Appeals reversed, holding that the conditions of his release were inadequate to protect the community and that it was premature to predict the length of the defendant's pretrial detention. The court noted that although the length of a defendant's pretrial detention might not survive a due process challenge, that question was not before it. The court added, significantly for this proceeding, that "at the time of oral argument, Colombo had not availed himself of the opportunity to move to expedite his trial or for a severance." 777 F.2d at 101. Like

Colombo, Locascio has not availed himself of the opportunity to move to expedite his trial or for a severance. *See also,* in this regard, *United States v. Hare,* 873 F.2d 796, 805 (5th Cir.1989).

In *United States v. Gonzales–Claudio,* 806 F.2d 334 (2d Cir.1986), the defendant had been detained as a risk of flight. On the date his appeal was heard he was detained for fourteen months and it was estimated that period would extend to two years and two months before his trial was concluded. The defendant claimed that the duration of his detention exceeded constitutional limits. Addressing that claim, the court held that the constitutional duration of pretrial detention must be assessed on a case-by-case basis and a bright-line limit was not appropriate. In addition to duration, the factors to be considered in this context are the extent to which the prosecution is responsible for the delay and the strength of the evidence upon which the detention was based.

In *United States v. Ojeda Rios,* 846 F.2d 167 (2d Cir.1988), the court reaffirmed the case-by-case approach and the application of the same factors to the due process-pretrial detention analysis. Other courts have recognized the same balancing test. *See, e.g., United States v. Gelfuso,* 838 F.2d 358 (9th Cir.1988); *United States v. Hare,* 873 F.2d 796 (5th Cir.1989). In *United States v. Infelise,* 934 F.2d 103 (7th Cir.1991), the defendants appealed the district court's denial of their motion to revoke their pretrial detention (which was expected to extend over a period of two years by the conclusion of the trial). They argued that such prolonged detention was a denial of due process. The court responded succinctly and felicitously as follows:

The government cannot be permitted to defeat the restrictions with which the Bill of Rights hedges about criminal prosecutions by indefinite delay in bringing defendants to trial.... But length of detention cannot be the only consideration, ... not only because some criminal cases are inherently complex and difficult to bring to trial quickly, and not only be-

cause some defendants awaiting trial are highly dangerous or highly prone to flee unless confined, but also because the extent of delay is to some extent within the control of the defendants themselves, and they cannot be allowed to manufacture the grounds for their constitutional argument. *If judge and prosecutor are doing all they reasonably can be expected to do to move the case along, and the statutory criteria for pretrial detention are satisfied, then we do not think a defendant should be allowed to maintain a constitutional challenge to that detention. To get to first base, therefore, he must show that either the prosecution or the court has unnecessarily delayed in bringing the case to trial.* 934 F.2d at 104–05 (emphasis added).

An assessment of the relevant factors in this case compels the conclusion that the pretrial detention of Locascio does not offend " 'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *United States v. Salerno*, 481 U.S. 739, 751, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). The crimes with which Locascio is charged are serious, the government's proof that he poses a danger to the community is strong, and the delay is not attributable to the government.

■ The second issue raised by the defendant's motion and petition is whether there are conditions or a combination of conditions that would protect the community against the danger the defendant's release would pose. The defendant proposes a number of conditions which, he contends, would provide that protection. He would agree to remain under house arrest on his farm in Phillipsport, New York, situated one hundred miles from New York City, except for supervised travel to and from court appearances and visits to his attorney's office. He proposes that his movements and those of his visitors could be monitored by sophisticated electronic surveillance systems. He would agree to a pen register recording device on his tele-

phone line and the monitoring of all telephones located on the farm. He would agree to be visited only by his immediate family and those approved by the court or the government and to be subject to unannounced inspections by Pretrial Services representatives.

Similar proposals were presented on behalf of all the defendants at the detention hearing on December 21, 1990. In rejecting the proposal, I observed that it was, in essence, one which would elaborately replicate a detention facility without the confidence of security such a facility instills. The defendant described the access to the farmhouse as a narrow dirt road which could be monitored on a television screen as could the perimeters of the farm. Of course that would require three eight-hour shifts of law enforcement personnel to monitor the TV screens and three eight-hour shifts of law enforcement personnel to monitor pen registers and telephone taps. Responding to the evidence that defendants used their attorneys' offices to meet with their confederates, defense counsel offered to set aside a room in his office which would not have a telephone at which he would meet with his client. Of course that would require teams of personnel to conduct surveillance at the attorney's office and access to it.

If the government's interest in the safety of the community is sufficiently weighty, as it clearly is here, so that the defendant's liberty interest may properly be subordinated to the greater need of society, must the government then provide a cadre of law enforcement personnel to honor that properly subordinated liberty interest? In *United States v. Infelise*, 765 F.Supp. 960 (N.D.Ill.1991) the court answered that question as follows:

> The court finds there is a limit to the amount of government resources which have to be expended to release dangerous defendants pretrial, when their constitutional rights are not being violated by continued detention.

765 F.Supp. at 964.

I am completely in accord with that finding. In addition, I would note that such

finding aside, the conditions proposed do not provide the assurances of safety the community deserves. The wonders of science and of sophisticated electronic technology have made mobile and portable telephones commonplace. Communication devices are easily carried in briefcases and even shirt pockets. Pen registers and wiretaps are easily circumvented. Monitoring equipment is easily rendered inoperative or becomes so by mechanical failure. In sum, I conclude that there are no conditions or combination of conditions that will reasonably assure the safety of any person and the community. The defendant's motion is denied and his petition is dismissed.

SO ORDERED.